[No. 78156-7. En Banc.]
Argued November 28, 2006. Decided July 19, 2007.

*In the Matter of the Personal Restraint of* SCOTT W. SKYLSTAD, *Petitioner.*

*Jeffrey E. Ellis* (of *Ellis Holmes & Witchley, PLLC*), for petitioner.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 SANDERS, J. — We are asked to determine whether a judgment is final if a defendant's sentence is still under appeal. RCW 10.73.090 prevents collateral attacks on a

judgment and sentence to be filed more than one year after the judgment becomes final. Scott Skylstad filed a personal restraint petition (PRP) during the second of two direct appeals, more than one year after his conviction but while his sentence was on appeal. Despite this ongoing second appeal, the Court of Appeals held Skylstad's PRP was time-barred.

¶2 We hold Skylstad's judgment was not final because his sentence was still being appealed. A judgment cannot be final until the conviction and the sentence are both final. Therefore, we remand to the Court of Appeals to determine the merits of Skylstad's PRP.

I

FACTS

¶3 The relevant facts are undisputed although confusing. On February 8, 2002, Scott Skylstad was convicted in Spokane County Superior Court of first degree robbery with a firearm enhancement. He appealed the conviction, and the State cross-appealed the sentence. On October 7, 2003, the Court of Appeals, in an unpublished opinion, affirmed the conviction but reversed the sentence. *State v. Skylstad*, noted at 118 Wn. App. 1062, 2003 Wash. App. LEXIS 2298. We denied review on May 4, 2004, *State v. Skylstad*, 151 Wn.2d 1023, 91 P.3d 95 (2004), and the mandate from the first appeal issued on May 14, 2004.

¶4 The trial court resentenced Skylstad on July 28, 2004, and Skylstad appealed again. On October 11, 2005, the Court of Appeals affirmed Skylstad's sentence. On November 21, 2005, during the pendency of his second appeal, Skylstad filed a PRP. The Court of Appeals dismissed the PRP on December 15, 2005, finding it was time-barred and claiming the May 14, 2004 mandate issued in the first appeal was the date of final judgment. On September 6, 2006, we denied review of the opinion in the second direct appeal. *State v. Skylstad*, 157 Wn.2d 1023, 142 P.3d 609

(2006). Then on September 15, 2006, the Court of Appeals issued a final mandate in this case.[1]

¶5 We granted discretionary review to determine whether there could be a final judgment before there was a final sentence.

## II

## ANALYSIS

A. Can a Judgment Be Final If the Sentence Is Not?

 ¶6 Statutory construction, like all questions of law, is reviewed de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). Criminal defendants can bring collateral attacks against their judgment and sentence but must do so within one year of their judgment being final. Specifically, RCW 10.73.090 provides:

(1) No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than *one year after the judgment becomes final* if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

(2) For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.

(3) For the purposes of this section, a judgment becomes final on the last of the following dates:

(a) The date it is filed with the clerk of the trial court;

(b) The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or

---

[1] Because this mandate was issued after we granted review of the PRP, Skylstad moved to supplement the record with the September 15, 2006 mandate. The State made no objection. Skylstad made a good faith effort to supplement the record promptly after the mandate was issued, and the mandate makes the record "sufficiently complete to permit a decision on the merits." RAP 9.10. We therefore grant Skylstad's motion to supplement the record with the September 15, 2006 mandate.

(c) The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. The filing of a motion to reconsider denial of certiorari does not prevent a judgment from becoming final.

(Emphasis added.) We apply unambiguous statutes according to their plain language; only ambiguous statutes will be construed. *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). When we read a statute, we must read it as a whole and give effect to all language used. *State v. Young*, 125 Wn.2d 688, 696, 888 P.2d 142 (1995). And no construction should be accepted that has "unlikely, absurd, or strained consequences." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992).

1. RCW 10.73.090 plainly says a judgment is final when review is terminated on both the conviction and the sentence

█ ¶7 RCW 10.73.090 is not ambiguous. A collateral attack on a judgment and sentence must be made within one year of the final judgment. A judgment is final when any of the requirements of RCW 10.73.090(3) are met. Depending on a defendant's course of action, each requirement of subsection (3) sets the final judgment date to when all litigation on the merits ends. After a defendant is convicted, he has three options: he can accept the judgment and sentence, he can appeal to only our state courts, or he can appeal to our state courts, and then, if he loses, he can seek review in the United States Supreme Court on a federal issue. If a defendant chooses not to appeal (or his time to appeal expires), judgment is final when the trial court clerk files the judgment. RCW 10.73.090(3)(a). This ends all litigation on the merits. Alternatively, if a defendant appeals, then the judgment is final when the appellate court issues its mandate "disposing of direct appeal." RCW

10.73.090(3)(b). This terminates review[2] and similarly ends all litigation on the merits. Finally, if the defendant petitions the United States Supreme Court for certiorari, then the judgment becomes final when the United States Supreme Court denies his petition. RCW 10.73.090(3)(c). This also terminates review and ends litigation on the merits. Therefore, pursuant to RCW 10.73.090 a judgment becomes final when all litigation on the merits ends.

¶8 This comports with the plain meaning of "final." *Webster's Third New International Dictionary* gives many definitions of "final," but the one most apposite to a final legal judgment is: "being a judgment . . . that eliminates the litigation between the parties on the merits and leaves nothing for the inferior court to do in case of an affirmance except to execute the judgment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 851 (2002).[3] *Black's Law Dictionary* gives a similar definition for "final": "(Of a judgment at law) not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded," and for "final judgment": "A court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment." BLACK'S LAW DICTIONARY 662, 859 (8th ed. 2004).

¶9 This is also how both this court and the United States Supreme Court have defined final judgment. We have said, "[i]n a criminal proceeding, a final judgment 'ends the litigation, leaving nothing for the court to do but execute the judgment.'" *State v. Taylor*, 150 Wn.2d 599, 601-02, 80 P.3d 605 (2003) (internal quotation marks omitted) (quoting *In re Det. of Petersen*, 138 Wn.2d 70, 88, 980 P.2d 1204 (1999)); *see also State v. Siglea*, 196 Wash. 283, 285, 82 P.2d

---

[2] A mandate is "written notification by the clerk of the appellate court to the trial court and to the parties of an appellate court decision terminating review." RAP 12.5(a).

[3] *Webster's Third New International Dictionary* gives its definition in the context of the United States Supreme Court, but the same would obviously apply to any high state court as well.

583 (1938) ("As a prerequisite to an appeal in a criminal case, there must be a final judgment terminating the prosecution of the accused and disposing of all matters submitted to the court for its consideration and determination."). Similarly, the United States Supreme Court has said a final judgment " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945)).

¶10 Here more needed to be done than simply executing the judgment—the superior court still had to determine Skylstad's sentence. In criminal cases, "[t]he sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L. Ed. 204 (1937) (stating a judgment cannot be final if the sentence has been vacated); *see also State v. Harrison*, 148 Wn.2d 550, 561-62, 61 P.3d 1104 (2003) (stating after defendant's "sentence was reversed, . . . the finality of the judgment is destroyed" and defendant's "prior sentence ceased to be a final judgment on the merits"); *Siglea*, 196 Wash. at 286 ("In a criminal case, it is the sentence that constitutes the judgment against the accused, and, hence, there can be no judgment against him until sentence is pronounced."). Similarly, "final" means "the imposition of the sentence." *Flynt v. Ohio*, 451 U.S. 619, 620, 101 S. Ct. 1958, 68 L. Ed. 2d 489 (1981) (per curiam); *see also Teague v. Lane*, 489 U.S. 288, 314 n.2, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989) ("[A] criminal judgment necessarily includes the sentence imposed upon the defendant."). Therefore, litigation on the merits continued and Skylstad's judgment could not be final until his sentence was final.

¶11 Under federal statutes similar to RCW 10.73.090, a judgment is not final until both the conviction and the

sentence have been affirmed.[4] *Burton v. Stewart*, 549 U.S. 147, 127 S. Ct. 793, 798-99, 166 L. Ed. 2d 628 (2007) (stating the statute of limitations for collateral review does not begin until both the conviction and the sentence become final). If a prisoner wishes to file a motion for habeas corpus review, he must do so within one year of his judgment becoming final. 28 U.S.C. §§ 2244, 2254, 2255. In *Burton*, the United States Supreme Court considered a Washington state case where Lonnie Burton was convicted of rape, robbery, and burglary. *Burton*, 127 S. Ct. at 794. Our Court of Appeals affirmed the conviction but remanded for resentencing. *Id.* at 795 (citing *State v. Burton*, noted at 86 Wn. App. 1046 (1997)). While review of his sentence was pending, Burton filed a petition under § 2254 for a writ of habeas corpus attacking his conviction. This was rejected, and four years later, Burton filed a subsequent petition for habeas corpus, this time attacking the sentence. The United States Supreme Court found this later petition to be a "second or successive" petition, which Burton had not obtained authorization to file. *Id.* Burton argued, however, he had to file the first petition before the sentence was final, otherwise he would have exhausted the one-year statute of limitations. The Court dismissed this argument, saying the judgment was not final until *both* the conviction and the sentence were final and *all* direct appeals were exhausted or the time for such appeals had expired:

> But this argument misreads [the Antiterrorism and Effective Death Penalty Act], which states that the limitations period applicable to "a person in custody pursuant to the judgment of a State court" shall run from, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." [28 U.S.C.] § 2244(d)(1)(A). "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L. Ed. 204

---

[4] Obviously federal cases interpreting federal statutes are not dispositive of our interpretation of RCW 10.73.090. Nevertheless, their reasoning is both apposite and persuasive.

(1937). Accordingly, Burton's limitations period did not begin *until both his conviction and sentence* "became final by the conclusion of direct review or the expiration of the time for seeking such review"—which occurred well *after* Burton filed his 1998 petition.

*Id.* at 798-99 (first emphasis added).[5] Similarly, Skylstad's limitations period did not begin until both his conviction and sentence became final on September 15, 2006. Therefore, the May 14, 2004 mandate was not a final judgment since only the conviction—but not the sentence—was final.

### 2. The State's reading of RCW 10.73.090 produces inconsistent and absurd results

¶12 Considering the clarity with which both the United States Supreme Court and this court have held a criminal judgment cannot be final until both the conviction and the sentence are final, there should be little doubt as to how we would resolve this case. But the State focuses on language in RCW 10.73.090 stating a judgment is final when "an appellate court issues its mandate disposing of a timely direct appeal from the *conviction*." RCW 10.73.090(3)(b) (emphasis added). Therefore, the State claims May 14, 2004—the date the conviction was final—was when the judgment

---

[5] The result in *Burton* is neither surprising nor novel considering the near unanimity with which federal courts of appeals have found a judgment is both a conviction and a sentence. *United States v. Lafromboise*, 427 F.3d 680, 684, *amended by* 2005 U.S. App. LEXIS 26809 (9th Cir. 2005) ("A contrary rule would result in 'multiple rounds of habeas review' as defendants would be forced to collaterally attack their convictions before the district court had reconsidered the sentence, and then later file a separate motion challenging the sentence." (quoting *United States v. Dodson*, 291 F.3d 268, 274-75 (4th Cir. 2002))); *see also Richardson v. Gramley*, 998 F.2d 463, 465 (7th Cir. 1993) ("A judgment is not final if the appellate court has remanded the case to the lower court for further proceedings, unless the remand is for a purely 'ministerial' purpose, involving no discretion, such as recomputing prejudgment interest according to a set formula."). Similarly, in federal proceedings, if one of a defendant's predicate state convictions is invalidated, he may then file a § 2255 petition, and the one-year statute of limitations begins from when the defendant knew there was a "conclusive invalidation of a state conviction." *United States v. Venson*, 295 F. Supp. 2d 630, 634 (E.D. Va. 2003) ("This result is compelled by principles of fundamental fairness, as a meritorious challenge to a predicate state court conviction may take well in excess of one year to reach a final state resolution—a delay clearly not attributable to the defendant.").

was final, while Skylstad argues conviction, judgment, and sentence should be read interchangeably. Pet'r's Suppl. Br. at 9.

¶13 While conviction, judgment, and sentence certainly are not interchangeable, the State focuses solely on one word—conviction—rather than reading the sentence and the statute as a whole. *See Young*, 125 Wn.2d at 696 (" 'Each provision must be viewed in relation to other provisions and harmonized if at all possible to insure proper construction of every provision.' " (quoting *Addleman v. Bd. of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986))). A "mandate disposing of a timely direct appeal from the conviction," RCW 10.73.090(3)(b), means the mandate that terminates review of both conviction and sentence—only then can the appeal be entirely disposed of.[6] Conversely, the State's reading produces inconsistent and absurd results.

¶14 First, the statute's purpose is to set a time limit for when a defendant can bring a "collateral attack on a judgment and sentence." RCW 10.73.090(1). When the Court of Appeals issued its mandate on May 14, 2004, Skylstad had no sentence. The State's reading would require Skylstad to have collaterally attacked his sentence within one year, even though he had no sentence to attack. This incongruity would prevent a defendant from ever being able to collaterally attack his sentence if his second appeal takes longer than a year.[7]

---

[6] The United States Supreme Court has also said final is "a case in which a judgment of conviction has been rendered," *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), and has consistently held a final judgment includes both a final conviction and a final sentence. *See Burton*, 127 S. Ct. at 798-99. Also, Federal Rule of Criminal Procedure 32(k) defines "judgment of conviction" as "the plea, the jury verdict or the court's findings, the adjudication, and the sentence."

[7] In petitioner's reply brief, Skylstad points out the absurd result of this construction: "While the vast majority of resentencing hearings take place within one year from remand, some (like capital cases) do not. Thus according to the State's interpretation of the statute, if this Court reverses and remands a capital case for a second special sentencing proceeding and that proceeding does not take

¶15 Second, after Skylstad's sentence was reversed, there was also no judgment for Skylstad to collaterally attack. When a court reverses a sentence, it effectively vacates the judgment because the "[f]inal judgment in a criminal case means sentence." *Berman*, 302 U.S. at 212. Without the sentence, there can be no judgment. *Id.* The State's reading would mean Skylstad had to bring a collateral attack against the judgment even though there was no valid judgment. And it strains reason to suggest there can be a final judgment where there is no valid judgment.

¶16 And finally, the legislature broadly defines collateral attack as "any form of postconviction relief other than a direct appeal." RCW 10.73.090(2). This includes "a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment." *Id.* A defendant should not be forced to seek such relief while his direct appeal is still pending. Depending on its result, Skylstad's second appeal could have mooted issues in his PRP and vice versa. *See Bode v. Clark Equip. Co.*, 807 F.2d 879, 881 (10th Cir. 1986) (stating a judgment is not final if it can be mooted by subsequent events).

¶17 RCW 10.73.090(3)(b) says a judgment is final when the appellate court mandate *disposes* of a timely direct appeal from the conviction. Skylstad's direct appeal from his conviction cannot be disposed of until both his conviction and sentence are affirmed and an appellate court issues a mandate terminating review of both issues. Therefore, because his second appeal was still pending, no final judgment was entered and the one-year limitation had not yet begun. Skylstad's PRP is not time-barred.[8]

---

place within a year of the mandate, he would *never* be able to challenge his conviction in a post-conviction proceeding." Pet'r's Reply Br. at 5.

[8] In his petition for review, Skylstad argues if we find his PRP is untimely, we should equitably toll the statute of limitations. Because we find his PRP to be timely, we need not reach this argument.

B. Should Skylstad's PRP Be Remanded to Superior Court?

¶18 Skylstad raises two new issues he claims cannot be determined solely on the record. Pet'r's Suppl. Br. at 17. Therefore, he requests we transfer his PRP to superior court for a determination on the merits under RAP 16.11.[9] As the rule states, this is best left to the discretion of the Court of Appeals chief judge who can consider Skylstad's PRP in its entirety and decide what issues can be determined on the merits and what issues must be transferred to superior court; it is premature for us to make such a decision. We need decide only whether Skylstad's PRP was timely.

## III

## CONCLUSION

¶19 We hold the mandate issued on May 14, 2004 was not a final judgment because it did not dispose of Skylstad's second appeal. A final judgment means both the conviction and sentence are final. Therefore, Skylstad's PRP is not untimely, and we remand to the Court of Appeals to determine the merits of Skylstad's PRP.

ALEXANDER, C.J., and C. JOHNSON, CHAMBERS, and J.M. JOHNSON, JJ., concur.

¶20 FAIRHURST, J. (dissenting) — The majority erroneously concludes a judgment is final under RCW 10.73-.090(3)(b) when the appellate court issues its mandate disposing of a timely direct appeal from both the conviction and the sentence. I would hold a judgment is final under RCW 10.73.090(3)(b) when the appellate court issues its mandate disposing of a timely direct appeal from the

---

[9] RAP 16.11(b) provides, "If the petition cannot be determined solely on the record, the Chief Judge will transfer the petition to a superior court for a determination on the merits or for a reference hearing."

conviction and affirm the Court of Appeals' conclusion that Scott W. Skylstad's personal restraint petition was time-barred. I respectfully dissent.

¶21 The court's primary goal in construing a statute is to determine and give effect to the legislature's intent. *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004) (citing *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)). We generally begin our analysis with the text of the statute. *Id.* " '[A] statute is ambiguous if it can be reasonably interpreted in more than one way.' " *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 433, 98 P.3d 463 (2004) (quoting *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)). "When a statute is ambiguous, 'this court will resort to principles of statutory construction, legislative history, and relevant case law to assist in interpreting it.' " *Id.* at 434 (quoting *Watson*, 146 Wn.2d at 955). However, a statute's failure to define a term or terms does not necessarily render it ambiguous. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920, 969 P.2d 75 (1998). "Rather, an undefined term should be given its plain and ordinary meaning unless a contrary legislative intent is indicated." *Id.* at 920-21 (citing *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992)). "Courts often look to standard dictionaries to determine the ordinary meaning of words." *Id.* at 922.

¶22 RCW 10.73.090(1) states, "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final." RCW 10.73.090(3) states, "a judgment becomes final" when (a) "it is filed with the clerk of the trial court," (b) "an appellate court issues its mandate disposing of a timely direct appeal from the conviction," or (c) "the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal." Because Skylstad filed a direct appeal of his conviction, only subsection (b) of RCW 10.73.090(3) is applicable here.

¶23 RCW 10.73.090 does not define the words "judgment," "sentence," or "conviction." Thus, we must analyze their plain and ordinary meaning to determine if the statute is ambiguous.

¶24 *Black's Law Dictionary* defines "judgment" as "[a] court's *final determination of the rights and obligations of the parties in a case*." BLACK'S LAW DICTIONARY 858 (8th ed. 2004) (emphasis added). It defines "sentence" as "[t]he judgment that a court formally pronounces *after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer*." *Id.* at 1393 (emphasis added). It defines "conviction" as "[t]he act or process of *judicially finding someone guilty of a crime*; the state of having been proved guilty." *Id.* at 358 (emphasis added).

¶25 It is clear that the words "judgment," "sentence," and "conviction" are not interchangeable, as the majority concedes. Majority at 953. Rather, the "judgment" is the court's formal decision or order in a case, the "sentence" is the punishment imposed on a defendant for the crime committed, and the "conviction" is the act of judicially finding a defendant guilty of committing the crime. Once we have determined the meaning of the words used in the statute, we must determine whether the statute is ambiguous and whether it requires application of the statutory interpretation canons.

¶26 RCW 10.73.090(1) clearly allows a defendant to file a petition or motion for a collateral attack on a "judgment" and "sentence" no more than one year after the "judgment" is final. RCW 10.73.090(3)(b) clearly defines the finality of a "judgment" as the date that the appellate court issues its mandate disposing of a defendant's timely direct appeal from his or her "conviction." The majority insists that in order to give meaning to the fact that RCW 10.73.090(1) allows a defendant to file a petition or motion for a collateral attack on a sentence, RCW 10.73.090(3)(b) must mean the date the appellate court issues the "mandate that terminates review of both conviction and sentence." Major-

ity at 953. But there is nothing in the statute that would suggest such a requirement.

¶27 Indeed, RCW 10.73.090(3)(b) could not be more clear in stating that the appellate court's mandate disposing of the defendant's timely direct appeal from his or her "conviction" renders the judgment "final." "The court may not add language to a clear statute, even if it believes the Legislature intended something else but failed to express it adequately." *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997). While it is true that RCW 10.73.090(1) allows a defendant to file a petition or motion for a collateral attack on the "judgment" and "sentence," that fact alone does not require the finality of the "judgment" to be based on both the "conviction" and the "sentence" if the statute does not require it.

¶28 The court should not read into a statute words that are not there. If the legislature had wanted to base finality of a judgment on both the conviction and the sentence, as the majority finds, it would have said so. The legislature's purpose in enacting RCW 10.73.090 was to restrict the time for a defendant to raise a collateral attack on his or her judgment and sentence. It defined that time as when the judgment becomes final and specifically outlined what final meant in RCW 10.73.090(3).

¶29 I would affirm the Court of Appeals and hold that Skylstad's collateral attack was time-barred because his judgment was final when the appellate court issued its mandate disposing of his timely direct appeal from his conviction. I respectfully dissent.

MADSEN, BRIDGE, and OWENS, JJ., concur with FAIRHURST, J.